**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diamond Adaway,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Aspire Loyalty Travel Solutions LLC,<br><br>　　　　　　Defendant. | No. CV-24-02792-PHX-DJH<br><br>**ORDER** |

The parties have filed a Joint Motion to Approve the Settlement Agreement (Doc. 16) and the Court must decide whether to approve the settlement and the award of attorneys' fees. For the reasons below, the Court grants the parties' Motion.

**I.  Background**

Plaintiff filed this suit on October 15, 2024. (Doc. 1). The Complaint alleges that Defendant failed to pay Plaintiff the federally mandated overtime premium for hours worked in excess of 40 hours per workweek in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. (Doc. 1 at ¶¶ 1, 60). Specifically, Plaintiff alleges that she needed to perform certain boot-up and call ready work to access Defendant's systems at a call center and that Defendant failed to compensate Plaintiff until she had completed those steps and marked herself available. (Doc. 1 at ¶¶ 22–26). Plaintiff alleges that this work was compensable time under FLSA and Defendant knew or should have known that this work was not being compensated. (Doc. 1 at ¶¶ 30–39).

Defendant maintains that it complied with the FLSA and denies Plaintiff's

allegation that she was not compensated for all time worked. (Doc. 15 at 2).

Soon after the Plaintiff filed her Complaint, the Parties reached a Settlement Agreement to resolve all claims, under the following terms: (1) Defendant agrees to pay to Plaintiff $5,500.00; (2) Plaintiff releases Defendant from any and all claims; (3) Plaintiff and Defendant request the Court to dismiss this suit with prejudice; (4) Plaintiff waives any right to any future employment with Defendant; (5) Defendant denies liability or wrongdoing; and (6) Plaintiff agrees that the agreement is confidential. (Doc. 15-1 at 1–4).

The Settlement Agreement requires payment to Plaintiff of $200.00 for alleged unpaid overtime, $200.00 for alleged liquidated damage, and $600.00 in settlement of Plaintiff's general release of claims. (Doc. 15-1 at 1–2). It also requires payment of $4,500.00 to Johnson Becker PLLC for attorneys' fees and costs. (Doc. 15-1 at 1–2).

**II.     Legal Standard**

In a FLSA case, the district court must approve the settlement's terms to ensure that it is enforceable and fair. *Juvera v. Salcido*, 2013 WL 6628039 at *3 (D. Ariz. Dec. 17, 2013) (citing, *inter alia*, *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013) (affirming holding in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982))). Courts in the Ninth Circuit follow *Lynn's Food* when deciding whether to approve the parties' settlement. *Villareal v. Caremark LLC*, 2016 WL 5938705 at *2 (D. Ariz. May 10, 2016); *Fontes v. Drywood Plus, Inc.*, 2013 WL 6228652 at *7 (D. Ariz. Dec. 2, 2013) (citing *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608 at *2 n. 3 (N.D. Cal. Dec. 19, 2012) (citing various cases)).

After determining whether there is a "bona fide dispute over FLSA provisions," the Court must decide if a stipulated settlement agreement is "a fair and reasonable resolution" of that dispute. *Lynn's Food*, 679 F.2d at 1353, 1355. The settlement is more likely to be fair and reasonable "if it was reached as an arm's length resolution of contested litigation" in a *bona fide* dispute under the FLSA. *Lockwood v. R&M Towing LLC*, 2020 WL 5724383, at *2 (D. Ariz. Sept. 24, 2020).

### III. Discussion

#### A. *Bona Fide* Dispute

"[A] *bona fide* dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Panico v. Turnbull Law Group LLC*, 2022 WL 220485, at *1 (D. Ariz. Jan. 25, 2022) (citation and internal quotations omitted). In other words, there must be some doubt over who would prevail on the merits of the case. *Lockwood*, 2020 WL 5724383, at *2.

Although Defendant did not answer the Complaint before the Parties reached a settlement, Defendant would have contested the merits of Plaintiff's allegations, the availability of liquidated damages, and whether this action can be maintained in federal court. (Doc. 15 at 4). Plaintiff also anticipates that Defendant would have raised defenses that "the work at issue is not compensable under the FLSA or is otherwise *de minimis*," which Plaintiff would dispute. (*Id.*) Thus, there is a *bona fide* dispute here.

#### B. Fair and Reasonable

While there are no universally used factors to evaluate whether a proposed FLSA settlement is fair and reasonable, "some factors courts have looked at are: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Panico*, 2022 WL 220485, at *2 (citing *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)). Courts evaluate whether a settlement agreement is fair and reasonable "under the totality of the circumstances." *Panico*, 2022 WL 220485, at *2 (citing *Selk*, 159 F. Supp. 3d at 1173).

##### 1. Plaintiff's Range of Possible Recovery

The settlement amount must "bear[] some reasonable relationship to the true settlement value of the claims." *Selk*, 149 F. Supp. 3d at 1174. The amount does not need to reach any specific percentage of the maximum possible recovery. *Id.* (citing

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (collecting cases)); *see Quintana v. HealthPlanOne, LLC*, 2019 WL 3342339, at *3 (D. Ariz. July 25, 2019) (finding settlement fair where settlement assumed five minutes of unpaid work per day and complaint alleged ten to fifteen minutes); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding settlement fair where the settlement amount represented between nine and 27 percent of the maximum possible recovery); *Alleyne v. Time Moving & Storage Inc*, 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (finding settlement fair where the settlement amount represented between 13 and 19 percent of the maximum possible recovery). A district court must determine that, compared to the amount the plaintiffs could have obtained at trial, the settlement amount is fair and reasonable under the circumstances presented. *Selk*, 149 F. Supp. 3d at 1174.

Here, Plaintiff represents that $200.00 for alleged unpaid overtime in the settlement agreement accounts for five minutes of overtime per workday. (Doc. 15 at 4). Plaintiff alleges that she worked 10 minutes per day uncompensated. (Doc. 15 at 2). Although Plaintiff does not explicitly present her own estimates for unpaid wages, this suggests that her alleged maximum possible recovery for unpaid overtime is $400.00.[1] Defendant's position is that Plaintiff is owed nothing, but if Plaintiff proves all her allegations, her maximum possible recovery for unpaid wages amounts to $137.36. (*Id.*) Thus, the $200 for alleged unpaid overtime probably constitutes between 50 and 145.6 percent of her maximum possible recovery. In addition, the settlement agreement apportions to Plaintiff another $200 for alleged liquidated damages. (*Id.*)

The parties have not provided the Court with any information with which to double-check their calculations.[2] Nevertheless, the settlement amount rises to a

---

[1] The Motion does not make clear what Plaintiff alleges her maximum possible recovery would be. (*See* Doc. 15). While the Motion states that the settlement provides "recovery of approximately 50% of her alleged damages," it is uncertain whether that 50% figure refers to only Plaintiff's receipt of $200.00 for alleged unpaid overtime or to her receipt of $400.00 for alleged unpaid overtime and liquidated damages. (*See* Doc. 15 at 4).

[2] In the Complaint, Plaintiff alleges that she worked for Defendant from March 2023 to September 2023; at an hourly rate of $18.50 for the workweek of April 3, 2023; and that the boot-up and call ready work takes up to 10 minutes per shift, or more with technical issues. (Doc. 1 at ¶¶ 11, 25, 35–37). However, the Court is not aware of how often

substantial percentage of Plaintiff's maximum possible recovery, which weighs in favor of approving the settlement. *See Bellinghausen*, 306 F.R.D. at 256.

### 2. Stage of Proceedings and Amount of Discovery Completed

A district court must evaluate the stage of proceedings and the amount of discovery completed to ensure the parties understand the merits of the case before reaching a resolution. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution."). Formal discovery is not necessary as long as the parties "have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see Quintana*, 2019 WL 3342339, at *3 (finding settlement fair and reasonable where the parties "engaged only in a portion of the first phase of discovery").

Here, although the parties have not conducted formal discovery, the parties represent that they are "well-apprised of the information necessary to resolve Plaintiff's claim." (Doc. 15 at 5). For example, Defendant has provided Plaintiff with the employment records necessary to calculate alleged damages. (*Id.*) This is sufficient information for both parties to reach a resolution in this case. *See Quintana*, 2019 WL 3342339, at *3.

### 3. Seriousness of the Litigation Risks

Another consideration in judging the fairness of a settlement is whether "the settlement terms compare favorably to the uncertainties associated with continuous litigation." *Nat'l Rural Telecomm's Coop.*, 221 F.R.D. at 526. There is no need for the Court to reach an ultimate conclusion about the merits of the case before it has had an opportunity to consider them. *Bellinghausen*, 306 F.R.D. at 255. Instead, the Court assess the likelihood of success based on an approximate balancing of "the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it,

---

Plaintiff worked, for what length of time, and at what hourly rate; therefore, it relies on the parties' representations in the Motion to determine that this is indeed the true range of possible recovery for Plaintiff.

- 5 -

discounted to a present value." *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Litigation risks support finding the settlement fair and reasonable when "the settlement provides certain compensation . . . now rather than awaiting an eventual resolution that would result in further expense without any definite benefit." *Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012).

At this stage of litigation, it is difficult for the Court to determine the likelihood of a verdict for Plaintiff or Defendant. Potential recovery ranges from Defendant's position that it owes Plaintiff nothing to Plaintiff's allegations that she is owed up to ten minutes of unpaid overtime per workday, plus liquidated damages. (Doc. 15 at 2). Because the parties reached this settlement agreement so soon after the Complaint, there is nothing in the record to show how likely either party is to succeed on the merits.

The parties point to risk of protracted and uncertain litigation as a reason why the settlement is fair and reasonable. (*Id.* at 5). The parties do not agree whether this matter can proceed before the Court or it must go to arbitration according to a provision in Defendant's Employee Covenants Agreement. (*Id.* at 1–2). Either way, there would then be a need for formal discovery. The parties estimate that this would likely delay resolution of the case by at least a year. (*Id.* at 5). Furthermore, the parties believe there is no guarantee that "Plaintiff can prove 5 minutes of unpaid work per workday and that she was eligible for overtime pay for her full employment." (*Id.* at 6).

Because this settlement provides Plaintiff certain compensation now instead of an indefinite resolution in the future, this factor weighs in favor of approving the settlement. *See Nat'l Rural Telecomm's Coop.*, 221 F.R.D. at 526.

### 4. Scope of Release Provision

Courts review the scope of any release provision in a FLSA settlement to prevent employees from being "pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. Otherwise, employees who execute a broad release may exchange unknown rights for wages to which they are unconditionally entitled by statute. *Id.* (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351

1  (M.D. Fla. 2010)).  If the claims released in a settlement agreement are not limited to the
2  allegations brought in the case, that will disfavor finding the agreement fair and
3  reasonable.  *See Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 1671489 (S.D. Cal.
4  Apr. 28, 2014) (finding FLSA settlement not fair and reasonable in part because the
5  release provision was overly broad and released unrelated claims); *McKeen-Chaplin*,
6  2012 WL 6629608, at *5 (finding FLSA settlement not fair and reasonable in part
7  because the release provision exceeded the breadth of the allegations and released known
8  or unknown unrelated claims).  A broad release of claims will overcome a presumption of
9  unfairness only when plaintiffs "receive independent compensation."  *Furman v.
10 Zempleo, Inc.*, 2024 WL 5048904, at *4 (S.D. Cal. Dec 9, 2024); *Selk*, 159 F. Supp. 3d at
11 1178.

12      Here, the settlement agreement includes a release of any and all claims against
13 Defendant by Plaintiff.  (Doc. 15-1 at 2–3).  In return, Plaintiff receives $600.00.
14 (*Id.* at 1).  Although this release extends beyond the claims at issue, the separate payment
15 justifies the broad release.  *See Furman*, 2024 WL 5048904, at *4 (approving a similar
16 release where the plaintiff received an additional $7,500.00, beyond a pro rata share of
17 the settlement and a $7,500.00 service fee); *Selk*, 159 F. Supp. 3d at 1179 (approving a
18 similar release where the plaintiff received an additional $5,500.00, beyond an individual
19 settlement payment and a $5,000.00 service fee).  While the $600.00 consideration is less
20 than other similar cases, it is proportional to the alleged unpaid overtime and liquidated
21 damages that Plaintiff receives in the settlement agreement, which total to $400.00.
22 (Doc. 15 at 2).  Thus, the separate consideration justifies the scope of the release.  *See
23 Selk*, 159 F. Supp. 3d at 1178–79.

24      Additionally, although Plaintiff brought a collective action complaint at first
25 (Doc. 1), no other employees have opted into this lawsuit. (Doc. 15 at 5).  As such, the
26 settlement agreement will have no bearing on the rights of other employees.  (*Id.*)  The
27 only employee whom the release affects is Plaintiff, who consents to and will receive
28 independent compensation for it.  (Doc. 15-1 at 1).  Because the release only affects the

- 7 -

rights of Plaintiff and no other employee, there is no danger that employees will be "pressured" into waiving rights unrelated to the litigation. *Selk*, 159 F. Supp. 3d at 1178. Therefore, the scope of release is reasonable. *See id.*

### 5. Experience and Views of Counsel and Opinions of Participating Plaintiffs

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Therefore, courts should give "considerable weight" to the opinions of counsel "because of counsel's familiarity with the litigation and previous experiences with cases." *Selk*, 159 F. Supp. 3d at 1176 (internal punctuation and citations omitted).

Attorney Zackary S. Kaylor provided a declaration noting his and his firm, Johnson Becker PLLC's extensive experience with FLSA claims and call center cases in particular. (Doc. 16). Here, Plaintiff's counsel views a "50% recovery of alleged damages [as] a successful resolution," especially since Plaintiff did not yet have to undergo the risks and costs associated with discovery and continued litigation. (Doc. 15 at 6). The parties indicate that the assumptions in the settlement favor Plaintiff because it assumes that she "can prove five minutes of unpaid work per workday and that she was eligible for overtime pay for her full employment." (*Id.*) Moreover, there is only one Plaintiff in this FLSA case and she has agreed to this settlement. (Doc. 15-1). Given the views of counsel and the opinion of Plaintiff, this factor weighs in favor of approval. *See Furman*, 2024 WL 5048904, at *5.

### 6. Possibility of Fraud or Collusion

When investigating the possibility of collusion in a FLSA settlement, courts look for "signs that class counsel have allowed pursuit of their own self-interest and that of certain [plaintiffs] to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Grounding the amount of recovery in data and records "guards against the arbitrariness that might suggest collusion." *Furman*, 2024

WL 5048904, at *5 (quoting *Selk*, 159 F. Supp. 3d at 1179).

Here, there is only one Plaintiff, reducing the likelihood that counsel privileged their own self-interest over their clients or favored certain plaintiffs over others. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 at 947. The parties represent that the $200.00 of alleged unpaid wages is based on a calculation of five minutes of unpaid work per workday, so the amount of recovery is grounded in data and employment records.[3] (Doc. 15 at 6). As such, there is no evidence of fraud or collusion. *See Furman*, 2024 WL 5048904, at *5.

### 7. Conclusion

The Court has found that the proposed settlement in the amount of $1,000.00 is a fair and reasonable resolution of a *bona fide* dispute over FLSA coverage. *See Lynn's Food Stores*, 679 F.2d at 1355. The Court approves the settlement.

### C. Attorney's Fees and Costs

Plaintiff's counsel seeks $4,500.00 in attorneys' fees and costs. (Doc. 15 at 2). Defendant does not oppose this request. (Doc. 15 at 6 n.2).

The FLSA requires courts to allow payment of reasonable attorney's fees and costs. 29 U.S.C. § 216(b). In a proposed FLSA settlement, the court must assess the reasonableness of the fee award. *Selk*, 159 F. Supp. 3d at 1180. Typically, there is an initial presumption of fairness where the settlement was negotiated at arm's length. *In re First Cap. Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992). The Ninth Circuit has held that attorney fee awards in socially beneficial cases should not be measured in relation to the damage award. *See, e.g.*, *Int'l Bhd. Of Carpenters & Joiners of Am., AFL-CIO, Loc. Union No. 217 v. G.E. Chen Constr., Inc.*, 136 F. App'x 36, 39 (9th Cir. 2005) (upholding attorney's fees of more than $200,000 where plaintiff's recovery was less than $50,000 in a FLSA claim); *Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988) (holding that a district court improperly

---

[3] This data itself is not in the record, and the Motion does not explain how the parties arrived at the $200.00 figure, so the Court relies on the parties' representation that this figure arises from Defendant's employment records.

- 9 -

reduced attorney's fees based on a small damage award in section 1983 claim).

The predominant method of determining a reasonable attorney's fee award is the lodestar method. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The lodestar is calculated by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The calculation of reasonable hours and hourly rate is up to the discretion of the Court. *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014). The lodestar figure is presumptively reasonable, but "the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

The Ninth Circuit requires district courts to consider the twelve non-exclusive *Kerr* factors when deciding the reasonableness of attorneys' fees.[4] *Carter*, 757 F.3d at 868–869 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The district court need not address every *Kerr* factor. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1264 n.11 (9th Cir. 1987). But the court must provide a "concise but clear explanations of its reasons for the fee award." *Hensley*, 461 U.S. at 437.

### 1. Reasonableness of Hourly Rates

The fee applicant bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Satisfactory evidence includes plaintiff's attorneys' affidavits, other attorneys' affidavits, and rate determinations in other cases. *Camacho*, 523 F.3d at 980.

Plaintiff's counsel seeks $3,789.00 in attorneys' fees. (Doc. 15 at 9). In Mr.

---

[4] The Kerr factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Carter*, 757 F.3d at 868–869 (citing *Kerr*, 526 F.2d at 70).

Kaylor's declaration, he represents that they have spent 21.50 hours on this case. (Doc. 16 at ¶ 20). Dividing the requested fees by the expended hours demonstrates an effective billing rate of $176.23. Mr. Kaylor lists customary billing rates of $850.00 for partner Jacob Rusch, $600.00 for associate Zackary S. Kaylor, and $125.00 for legal assistant Yer Thao. (Doc. 16 at ¶¶ 14–16, 20). Plaintiff also cites several recent cases finding Johnson Becker's hourly rates ranging from $325 to $800 reasonable in other FLSA cases. (Doc. 15 at 9–10). One of these was in the District of Arizona. (*Id.* (citing *Haegg v. Magellan Health Inc.*, 2:22-cv-00061-SPL, ECF No. 68 (D. Ariz. Apr. 13, 2023))).

Here, Plaintiff's counsel requests an effective billing rate lower than their customary billing rates, which have been found reasonable in similar cases. Defendant has not opposed an award of attorneys' fees to Plaintiff. (Doc. 15 at 6 n.2). Therefore, the requested hourly rate is reasonable. *See Camacho*, 523 F.3d at 980.

### 2. Reasonableness of Hours Expended

The Court should exclude "hours that were not reasonably expended" from its initial lodestar calculation. *Hensley*, 461 U.S. at 434. Hours were not reasonably expended if they were "excessive, redundant, or otherwise unnecessary." *Id.* The fee applicant bears the initial burden of documenting the hours expended and providing evidence in support of them. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). If a party opposes the fee application, then it bears the burden of rebutting "the accuracy and reasonableness of the hours charged." *Id.* at 1397–98. Generally, a district court should defer to the fee applicant's judgment as to how many hours were required for the case. *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015).

Here, Plaintiff's counsel has represented that they spent 21.50 hours on this case. (Doc. 16 at ¶ 20). They avow that they spent this time, "*inter alia*, developing Plaintiff's case, preparing the complaint, and negotiating this settlement." (Doc. 15 at 8). Plaintiff's counsel has satisfied the initial burden of showing the reasonableness of their hours expended, and Defendant does not oppose their request. (Doc. 15 at 6 n.2).

- 11 -

Therefore, the hours expended are reasonable. *See Gates*, 987 F.2d at 1397–98.

### 3. Costs and Expenses

Courts have interpreted "'reasonable attorney's fees' to include 'reasonable out-of-pocket litigation expenses that would normally be charged to a fee-paying client.'" *Cmty. Ass'n for Restoration of Env't Inc. v. DeCoster*, 704 F. Supp. 3d 1110, 1120 (E.D. Wash. 2023) (quoting *Trustees of Const. Industry and Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006)). Expenses that have "significantly contributed to the outcome of [the] case" are likely to be reasonable. *See Cmty. Ass'n for Restoration of Env't Inc.*, 704 F. Supp. 3d at 1120 (awarding expert fees as reasonable costs because they significantly contributed to the outcome of the case). However, reasonable attorneys' fees include expenses "only when it is 'the prevailing practice in a given community' for lawyers to bill those costs separately from their hourly rates." *Redland Ins. Co.*, 460 F.3d at 1258 (citing *Missouri v. Jenkins*, 491 U.S. 274, 286–287 (1989)).

Plaintiff's counsel requests $711.00 in costs and expenses, which includes $511.00 in filing and service fees and $200.00 in *pro hac vice* fees. (Doc. 16 at ¶ 25). Once again, Defendant does not oppose this request. (Doc. 15 at 6 n.2).

Awards of costs and expenses include filing fees. *Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 741, F.3d 955, 957 (9th Cir. 2013). Moreover, courts have awarded filing and service fees as costs in Arizona before. *Quintana*, 2019 WL 3342339, at *7. Since filing and service fees are considered reasonable expenses and awarded as costs in Arizona, Plaintiff's counsel's request for $511.00 is reasonable. *Id.*

*Pro hac vice* fees are also "a reasonable and necessary part of the litigation" and can be awarded as part of attorneys' fees. *Etter v. Allstate Ins. Co.*, 2018 WL 5791883, at *3 (N.D. Cal. Nov. 4, 2018) (awarding *pro hac vice* fees because they were reasonable and necessary and because they were "the type [of expense] customarily billed to a fee-paying client"); *see also Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, 2018 WL 5013764, at *12 (W.D. Wash. Oct. 16, 2018), *aff'd sub nom. Johnson v. MGM Holdings,*

*Inc*, 943 F.3d 1239 (9th Cir. 2019), and *aff'd sub nom. Johnson v. MGM Holdings, Inc*, 794 F. App'x 584 (9th Cir. 2019) (awarding *pro hac vice* fees as "reasonable and appropriate"). Therefore, it is appropriate to award *pro hac vice* fees as costs and expenses in this case.

The Court finds that Plaintiff's counsel's request for $711.00 in costs and expenses for filing, service, and *pro hac vice* fees is reasonable. *Cmty. Ass'n for Restoration of Env't Inc. v. DeCoster*, 704 F. Supp. 3d at 1120.

### 4. Award of Attorney's Fees and Costs

Plaintiff's counsel's request of $4,500.00 falls well below their lodestar figure of $12,695.00. (Doc. 15 at 9). This lodestar figure was calculated using reasonable hourly rates and reasonable hours expended. Defendant does not oppose this award of fees and costs. (Doc. 15 at 6 n.2). Therefore, the Court awards $4,500.00 in attorneys' fees and costs to Plaintiff.

Accordingly,

**IT IS ORDERED** that Plaintiff's Joint Motion to Approve the Settlement Agreement (Doc. 15) is **GRANTED**. The payment of $400.00 in alleged unpaid overtime and liquidated damages to Plaintiff, $600.00 for a general release of claims to Plaintiff, and $4,500.00 in attorneys' fees and costs to Plaintiff's counsel, Johnson Becker PLLC is **APPROVED**.

**IT IS FINALLY ORDERED** directing the Clerk of Court to terminate this matter.

Dated this 18th day of June, 2025.

Honorable Diane J. Humetewa
United States District Judge